Isabella Schloss v. Commissioner.
Schloss v. Commissioner
Docket No. 23171.
United States Tax Court
1951 Tax Ct. Memo LEXIS 317; 10 T.C.M. (CCH) 183; T.C.M. (RIA) 51057; February 28, 1951
Nathan Weinstein, Esq., for the petitioner. Stephen P. Cadden, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This procedure involves redetermination of an income tax deficiency of $832.86 *318 for the taxable year 1943. The issue to be decided is whether the respondent erred in disallowing a claimed deduction for capital net loss of $8,250 for mortgages which are alleged to have become valueless in 1942. Although the deficiency determined is for the year 1943, the disputed loss for the year 1942 is involved by reason of the Current Tax Payment Act of 1943. The case was presented by partial stipulation of facts, oral testimony, and exhibits. Findings of Fact Petitioner is an individual residing in New York, New York. The returns for the periods here involved were filed with the collector of internal revenue for the third district of New York. All facts stipulated are so found and are incorporated in the findings wherever appropriate. During the year 1928, the petitioner paid the total amount of $8,250 for one-half interest in the following mortgages and accompanying bonds which were assigned to her and one Sara Rappaport: (a) Mortgage in the sum of $11,000 made by Samuel Goldstein to Frederick W. Harms and Mary Harms, dated May 5, 1925. (b) Mortgage in the sum of $2,500 made by Harold Hershman to John Walker, Joseph Walker, Henrietta Walker, Maud Walker and *319 Lottie Jenkins, dated January 25, 1923. (c) Mortgage in the sum of $3,000 made by John William Gage and Ellen Gage to Maria A. H. Young, dated August 22, 1923. All mortgages were recorded in the office of the register of Kings County. No interest or principal was ever paid on them. The State of New York had tax liens on the realty which were prior claims. This realty was three separate but contiguous pieces of property in section 24, block 8165 on the land map of the County of Kings, located on Rockaway Parkway, Brooklyn, New York. It had never been improved prior to 1942 and in that year, because of wartime restrictions, nothing could be built on it. Title was held by the Aljack Realty Corporation, formerly Stadium Carnarsie, Inc., in which petitioner and Sara Rappaport, who were on friendly terms throughout the taxable period here involved, were joint stockholders. Thus, the owners of the mortgage liens and the ultimate owners of the realty itself were the same persons, petitioner and Sara Rappaport. On February 1, 1942, one Theodolinda Maroni was allegedly injured on the sidewalk in front of the premises secured by the mortgages, and she filed claims against the City of *320 New York, Sara Rappaport, Isabella Schloss (petitioner), Aljack Realty Corporation, and Chancery Realty Corporation for damages allegedly sustained as a result of this accident. Action was instituted against these parties by Theodolinda Maroni about March 1943 in the Supreme Court, Kings County. On September 23, 1942, petitioner executed assignments of all her interests in these mortgages to the Melwell Corporation which assignments were recorded in the office of the register of the County of Kings on this date. Petitioner received no consideration for the execution and delivery of these assignments of mortgages. Petitioner was not connected in any way with the Melwell Corporation nor did she have any financial interest in it. In her income tax return for 1942 the petitioner claimed the purchase price of the mortgages, $8,250, as a deduction for an alleged loss from sales or exchanges of property other than capital assets. The respondent disallowed the claimed deduction. Petitioner then, in her petition, alleged that she was entitled to a deduction for a capital net loss in the amount of $8,250 by reason of "certain capital investments," i.e., the mortgages, becoming valueless *321 in the year 1942. The respondent in his answer denied this allegation. Opinion LEMIRE, Judge: The issue presented for our decision is whether respondent erred in disallowing a claimed deduction in the amount of $8,250 for capital loss or capital net loss. Petitioner was a joint stockholder in a corporation which owned realty in Brooklyn, New York. In 1928 she and the other stockholder in the corporation each purchased a one-half interest in mortgages and bonds secured by this same realty, petitioner paying $8,250 for her interest. In 1942 petitioner assigned her interest in the mortgages for no consideration to the Melwell Corporation, a corporation with which she had no connection. In her 1942 return she claimed a deduction for capital loss in the amount of $8,250, representing the mortgages thus assigned. Section 23(g) combined with the appropriate subparagraphs of section 117 [1] are the pertinent sections of the Internal Revenue Code. The effect of these provisions is that the petitioner, in order to be entitled to the claimed deduction, must establish a loss in an ascertainable amount evidenced by closed and completed transactions and fixed by an identifiable event in the *322 taxable year in which the deduction is sought. Reg. 111, sec. 29.23(e)-1; cf. ; (D.C.Minn., Fourth Division, July 9, 1943), and cases cited therein. The question is essentially one of fact and the petitioner has the burden of proof. ; (C.C.A., 3rd Cir., 1943); . *323 The petitioner alleges that the mortgages had some value as of January 1, 1942, and contends that an identifiable event occurred in 1942 which fixed the worthlessness of the mortgages in that year. The petitioner has failed to establish a value for the mortgages in 1942. Expert testimony was given on the value of the realty which secured the mortgages. The witness called by petitioner testified generally as to what factors should be considered in valuing property without making any specific statements as to how he applied those factors to the realty under consideration. The final valuation of the realty appeared to be based chiefly on the assumptions that this realty was comparable to properties examined by the expert and that its sales price, like theirs, would approximate 90 per cent of the assessed value. This value, he asserted, was approximately equal to that of the mortgages. Even if it were established that the properties examined by the expert were comparable in significant respects to the realty involved herein and that the ultimate valuation of the property was acceptable, this testimony could not be effective in establishing a value for the mortgages in question inasmuch *324 as this valuation did not allow for specific facts which could demolish or seriously alter the value of the mortgages. Thus, the testimony did not consider such facts as the amount of prior claims, including tax liens, in 1942; the costs of foreclosing the three mortgages; the effect of default in payment of principal and interest in or before 1942; the fact that petitioner owned only a half interest in the mortgages; and the terms of the mortgages and bonds with which terms the petitioner's witness was admittedly unfamiliar. Cf. (C.C.A., 2d Cir., 1937). Petitioner contends that the assignment of mortgages in question to the Melwell Corporation for no consideration was the identifiable event which fixed destruction of the mortgages' value in 1942. She made this assignment, she explained, because she was in fear of the threatened lawsuit eventually brought against her in 1943 by Theodolinda Maroni. How the assignment of the mortgages would protect her in the face of such a suit was not fully explained. Nor did it appear that she took any similar steps with respect to the realty itself, and we therefore presume that she continued *325 as a stockholder in the Aljack Corporation which held title to this land, even though the corporation too was threatened with the same suit. The suit itself was not instigated until March 1943 and its effect on the value of the mortgages in 1942 was not shown nor is it apparent what that effect might be. Thus, the petitioner has failed to establish that the assignment was an identifiable event fixing the claimed loss in 1942. Even assuming that the mortgages had a value in 1942, the stipulation that their assignment to the Melwell Corporation was a voluntary transfer for no consideration is prima facie evidence that the transfer was a gift. At least, the petitioner has not demonstrated that it was not a gift. "A loss, in order to be deductible under the statute, must be an unintentional parting with something of value." (Ct. Cl., 1932), certiorari denied, . No loss is realized by the transfer of property by gift. Reg. 111, sec. 29.23(e)-1; (C.C.A., 2d Cir., 1944); (C.C.A., 6th Cir., 1942); , *326 affd., ; . Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - * * *
(5) Long-Term Capital Loss. - The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such loss is taken into account in computing net income; * * *
(d) Limitation on Capital Losses. - * * * (2) Other Taxpayers. - In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of $1,000, whichever is smaller. For purposes of this paragraph, net income shall be computed without regard to gains or losses from sales or exchanges of capital assets. If the tax is to be computed under Supplement T, "net income" as used in this paragraph shall be read as "adjusted gross income."↩